STATE OF MISSOURI, at the Relation of HELEN HEADRICK and WILLIAM O. HEADRICK, Relators, v. WALTER E. BAILEY, Judge of the Circuit Court of Jasper County, Missouri, Presiding in Division One, Respondent, No. 44660—278 S. W. (2d) 737.

Court en Banc, April 25, 1955.

*Charles M. Cook* for relators.

*George M. Flanigan* and *McReynolds, Flanigan & Flanigan* for respondent.

[739] CAVE, Special Judge.—This is an original proceeding in prohibition. Relators contend that the respondent, a Judge of the Circuit Court of Jasper County, Missouri, exceeded his jurisdiction in making an order requiring relators to produce for inspection and transcribing certain tape recorded statements more fully referred to infra. To our provisional rule, the respondent filed his return and the relators filed reply thereto.

At the time the petition for writ of prohibition was filed in this court, a suit was pending in the Circuit Court of Jasper County styled ''Helen Headrick and William O. Headrick, Plaintiffs, vs. Nova Jean Samuels et al. Defendants'', and respondent was judge of that court.

That suit was in two counts: The first seeks to recover damages in the sum of $50,000 for personal injuries allegedly suffered by Helen Headrick as the result of the negligence of Mrs. Samuels; and the second count is a claim by William O. Headrick for his damages resulting from the alleged injuries of his wife, Helen.

While this cause was at issue and waiting trial, the defendant, Mrs. Samuels, filed a motion seeking an order of the circuit court requiring the relators to produce certain tape recorded statements for inspection and transcribing by her.

The sufficiency of the motion was not called in question, and we need not refer to it in detail. Evidence was heard in support of the motion, resulting in an order requiring the relators to produce the tape recordings for inspection and transcribing.

From the pleadings and exhibits attached thereto in this proceeding, and from the evidence heard by the respondent on the motion to produce, the facts are substantially as follows: On March 22, 1954, an automobile, owned by Fred Isenman and driven by Mrs. Samuels, was involved in a collision with two other vehicles. Relator Helen Headrick and a Mrs. Fred Isenman were passengers in that automobile. Immediately after the accident, Mrs. Samuels was taken to a hospital, and while there, Fred Isenman, on her behalf, telephoned attorney Charles Cook requesting that he come to the Samuels home to discuss with the parties the facts concerning the collision. About three hours later, Cook arrived at the Samuels home and interviewed Mrs. Samuels, Mrs. Fred Isenman and Helen Headrick, and recorded their statements by the use of a wire recording machine, which are referred to as "tape recordings". At that time, Mrs. Samuels understood Mr. Cook was going to represent her and her husband in any litigation growing out of the collision. There were several other persons present at the time. In the recorded statement of Helen Headrick, she described how the collision occurred and stated that *she had not received any injuries as a result thereof.* Mrs. Isenman, in her statement, described how the accident occurred. At the conclusion of the interview, Mrs. Samuels and her husband signed and delivered a written contract employing Mr. Cook as their attorney, but he did not sign the contract. Two days later, relators Helen Headrick and William O. Headrick employed Mr. Cook to file suit on their behalf against Mrs. Samuels and other defendants who were the owners and operators of the other vehicles involved in the collision. On the same day Mr. Cook returned to the Samuels their contract with this notation written thereon: "Withdrawal because of conflict of interest, 3-24-54—Charles M. Cook". Shortly thereafter, Mr. Cook filed the present damage suit on behalf of relators Helen Headrick and William O. Headrick and against Mrs. Samuels and others.

■ The statutory authority for an order to produce certain documents is found in Section 510.030, R. S. 1949, V.A.M.S., the pertinent part of which is: "Upon motion of any party *showing good cause therefor * * *,* the court in which an action is pending may * * * order any party to [740] produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects or tangible things, *not privileged,* which constitute or contain *evidence material to any matter involved in the action* and which are in his possession, custody, or control * * *." (Italics supplied.)

■ Relators admit that the statements in issue *are not privileged* as confidential communications to an attorney, because other parties were present. Canty v. Halpin, 294 Mo. 96, 242 S. W. 94. It also

appears that Mr. Cook was not acting as attorney for relators when the statements were recorded. However, they contend that the statements do not contain "competent and admissible evidence"; and "good cause" was not shown. Those are the only questions raised in their brief.

It is well settled that Section 510.030, supra, does not authorize an order for the production of any of the documents or things mentioned in said section unless they "constitute or contain evidence material" to some matter involved in the action; and that "good cause" must be shown for the production of relevant and material documents. State ex rel. Terminal R. Assn. v. Flynn, 363 Mo. 1065, 257 S.W. 2d 69.

In the trial court the burden rested upon the defendent, who was the party seeking the order, to satisfy the trial judge as to the relevancy and materiality of the statements sought to be ordered produced, and to show that they were not privileged and that there was good cause for their production. In this prohibition proceeding, however, relators are attacking the order which respondent made and the burden is on them to show that the statements ordered produced are not relevant or material to the issues in the pending cause and hence are not competent or admissible as evidence therein; or that good cause has not been shown for their production; or that respondent otherwise lacks jurisdiction or has exceeded his jurisdiction in entering the order. The presumption is in favor of the right action of the trial court. State ex rel. v. Flynn, supra; State ex rel. Cummings et al. v. Witthaus, 358 Mo. 1088, 219 S.W. 2d 383, 386.

To meet their burden, relators contend that the statements of Mrs. Headrick and Mrs. Isenman are merely hearsay and would not be admissible in evidence except for possible impeachment purposes. In support of this contention, they cite State ex rel. Thompson v. Harris, 355 Mo. 176, 195 S.W. 2d 645; State ex rel. Mo. Pac. R. Co. v. Hall, 325 Mo. 102, 27 S. W. 2d 1027; State ex rel. Page v. Terte, 324 Mo. 925, 25 S.W. 2d 459; State ex rel. Missouri Broadcasting Co. v. O'Malley, 344 Mo. 639, 127 S.W. 2d 684.

Those cases are not controlling insofar as the statement of Mrs. Headrick is concerned. They discuss a set of facts where the plaintiff in the original suit was seeking to compel the defendant to produce for his inspection a written statement which the *plaintiff* had given to the defendant or its agent. Under such circumstances, the plaintiff would be seeking an order to inspect *his own statement* which, of course, would not be competent or material evidence. In the instant case, an entirely different situation is presented. The *defendant* is seeking the production of a statement by the *plaintiff* which allegedly contains competent and material evidence against the *plaintiff*. It is apparent that one of the vital issues in the damage suit is whether Mrs. Headrick suffered injuries as a result of Mrs.

Samuels' negligence. The record supports the conclusion that her statement contains an admission that she did *not* receive any injuries. If that be true, such a statement would be an admission against interest and would be admissible in evidence by the defendant. Southern Bank of Fulton v. Nichols, 202 Mo. 309, 323, 100 S.W. 613; Mertens v. McMahon, 334 Mo. 175, 66 S.W. 2d 127, 137; Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S.W. 2d 618, 620; [741] Hudlow v. Langerhans, 230 Mo. App. 1160, 91 S.W. 2d 629, 632; State ex rel. Railroad v. Wood, 316 Mo. 1032, 292 S.W. 1033. Consequently, the recorded statement contained "evidence material" to a vital issue in the pending action. "Good cause" will appear from what is said infra.

We now consider whether respondent could, under Section 510.030, order relators to produce the statement of Mrs. Isenman. She was a passenger in Mrs. Samuels' automobile at the time of the collision, and merely "related her version of the facts· surrounding the acci-·dent". She is not a party to any suit against Mrs. Samuels. Consequently, any statement she made would be hearsay and not admissible in evidence. It could be used only for the purpose of impeachment. All the cases hold this possibility will not authorize an order to produce under the statute.

■ However, we are of the opinion that there is another reason, independent of the statute, why the court was authorized, in its discretion, to order the production of the statements of both Mrs. Isenman and Mrs. Headrick. From the evidence detailed supra, the court could properly find that relators' present attorney was acting in behalf of Mrs. Samuels at the time he took the statements; and that they were taken primarily for her protection in impending litigation. He was her agent performing a service for his client. Her interest ·in the statements has some elements of a property right. Under such circumstances, Mrs. Samuels is entitled to the production of the statements as the "work product" of her then attorney. State ex rel. Terminal R. Assn. v. Flynn, supra.

■ Certainly the court had inherent power to supervise and regulate the conduct of the attorney and the comditions upon which he could withdraw from one employment and accept another involving conflicting interests. In re Richards, 333 Mo. 907, 63 S.W. 2d 672; Rules 4.06, 4.37 and 4.44, Canon of Ethics. To hold otherwise would be to allow opportunity for unfair advantage to an attorney and those who later employ him in situations where their interests conflict with those of his original client. Under such circumstances the courts will carefully review the whole situation and make such orders and attach such conditions thereto as fairness and justice require.

From what we have said, it follows that our rule should be discharged. It is so ordered.

*Leedy, C.J., Dalton, Hollingsworth, Hyde* and *Westhues,* JJ., concur.