**STATE of Missouri, Respondent,**

v.

**Clarence GREEN, Appellant.**

**No. 57620.**

Supreme Court of Missouri,
Division No. 1.

July 22, 1974.

store armed with a .22 caliber, "sawed-off" rifle; that they confronted Doris Grueling with the gun, announced a holdup, and demanded the money in her cash register; that while she was placing the money in a bag, Nicholas Orlando entered the store; that Nicholas Orlando was shot in the back of his head and wounded to the extent of complete loss of memory and partial paralysis, and that Doris Grueling was shot and killed; that $173.18 was taken in the robbery; and that the money was divided between the robbers.

Appellant charges the court erred (I) in refusing to give an instruction to the effect that testimony of an alleged accomplice ought to be received with great caution because the alleged accomplice testified to defendant's prejudice that defendant participated in the robbery and shot the victims.

In support, appellant cites a number of cases, e. g., State v. Meysenburg, 171 Mo. 1, 71 S.W. 229 (1902), State v. Woolard, 111 Mo. 248, 20 S.W. 27 (1892), State v. Clark, 221 Mo.App. 893, 288 S.W. 77 (1926), State v. Williams, 266 S.W. 484 (Mo.App.1924), on his proposition that even though juries may convict on uncorroborated testimony of an accomplice, such evidence ought to be received with great caution by the jury and, presumably, that the court should so instruct the jury.

John C. Danforth, Atty. Gen., Richard E. Vodra, Asst. Atty. Gen., Jefferson City, for respondent.

Alan G. Kimbrell, Asst. Public Defender, Twenty-First Judicial Circuit, Clayton, for appellant.

HIGGINS, Commissioner.

Clarence Green was convicted by a jury of murder, first degree. His punishment was assessed at life imprisonment and sentence and judgment were rendered accordingly. (Appeal taken prior to January 1, 1972.)

Appellant does not question the sufficiency of evidence to sustain his conviction; and the evidence, including his statements to police officers, his video-taped statement, and testimony of an accomplice, would permit the jury to find: that on March 25, 1970, Doris Grueling was the manager of Hart's Bread Store, 701 South Florissant Road, Ferguson, St. Louis County, Missouri; that around noon Clarence Green and Henry French entered the

Appellant's proposition has no application in this case. In addition to testimony from the accomplice, there was evidence that the gun used to commit the crime was found at defendant's home, and defendant made admissions which implicated him in the crime. Accordingly, a different rule applies to this case, i. e., " * * * where there is other evidence than the accomplice's, identifying the defendant as the perpetrator of the crime, no such instruction is necessary." State v. Merrell, 263 S.W. 118, 121[6, 7] (Mo. 1924). See also, State v. Koplan, 167 Mo. 298, 66 S.W. 967 (1902); State v. London,

295 S.W. 547 (Mo.1927); State v. Caldwell, 428 S.W.2d 727 (Mo.1968).

Appellant charges the court erred (II) in giving Instruction No. 11 on credibility in that it failed to tell the jury that it could take into consideration a witness's (Henry French's) nine prior felony convictions, one of which was his conviction upon plea of guilty to this crime.

Instruction No. 11 was in the form of the usual credibility-of-witnesses instruction prior to MAI-CR.[1] It advised the jury that it was the sole judge of credibility of witnesses and the weight to be given their testimony, and what could be taken into account in making that determination: demeanor, manner, interest in the result of the trial, relation to or feelings toward the defendant or any witness, and the probability or improbability of witnesses' statements, as well as all facts and circumstances in evidence. There was no specification of prior convictions as a determinant which, in this case, would have applied to witness French alone.

Appellant argues that had no credibility instruction been given, appellant would have had no complaint; but since one was given, it was erroneous because it excluded a critical factor, prior convictions. He would support his argument by the maxim, *expressio unius est exclusio alterius.* See, e. g., Keane v. Strodtman, 323 Mo. 161, 18 S.W.2d 896 (banc 1929), in connection with statutory construction, and Hoover v. National Casualty Co., 236 Mo.App. 1093, 162 S.W.2d 363 (1942), in connection with contracts.

■■■ An instruction on credibility lies within the discretion of the trial court, State v. Worley, 353 S.W.2d 589 (Mo. 1962); and there was no abuse of discretion in giving Instruction No. 11. It was in conventional form and did not unduly direct attention to the credibility of a single witness. In this case, it would perhaps not have been error to include the request-

ed determinant because the witness in question admitted his prior convictions, but the better practice is to limit credibility-of-witnesses instructions to one generally referring to all witnesses alike. State v. Everett, 448 S.W.2d 873, 878[4–6] (Mo. 1970). See also MAI-CR 2.01.

Appellant charges the court erred (III) in permitting the State, on voir dire, to question prospective jurors about the rules on felony-murder and accessories, and in sustaining the State's challenges for cause because the questions were inaccurate, incomplete, and misleading statements of the law; called upon panelists to commit to a future course of conduct; and panelists' responses did not indicate they would not obey instructions or that they would be unfair and partial.

These questions consumed some twenty pages of the trial transcript. Typical is the questioning of panelist Andres.

"[By Mr. Merz, Assistant Prosecuting Attorney]: I expect the State will be proceeding under what is known in common reference as the felony murder rule. This law, which I expect the Court will give to you, very simply states that if the death occurs as a result of and during the commission of certain felonies, including robbery, that all participants in that robbery are guilty, equally guilty, of murder in the first degree, whether or not the particular person pulled the trigger or actually committed the murder himself. If one person commits the murder during the course of a robbery, then all persons involved in that robbery are equally guilty of that murder under the felony murder rule. This is the law that I expect the Court will submit to you, and this is the law that you will have to apply in determining this case. Is there anyone, any member of the jury panel, that feels that he could not accept that rule of law or would have any quarrel with that rule of law that would make it difficult or impossible for you to follow that rule of law? Is there anyone who

---

1. Under MAI-CR, such instructions may not be given. MAI-CR 2.01, note 2.

would have any difficulty with that rule of law? Mr. Andres?

"ROBERT R. ANDRES, JR.: Yes, I don't feel that I could justify someone to be guilty of murder if someone else shot someone.

"MR. MERZ: You do understand what I said, that this would apply, of course, only if both or all parties were participating in the robbery? You understand that? MR. ROBERT R. ANDRES, JR.: Yes, sir.

"MR. MERZ: And you feel—do you feel that—would you be unable to follow that rule of law if the Court gave it to you? MR. ROBERT R. ANDRES, JR.: Yes, sir. I feel that I would be. MR. MERZ: Thank you very much for speaking up, Mr. Andres. And, Your Honor, at this time, the State would ask that Mr. Andres be excused from this panel by reason of the fact that he would be unable to apply that particular law if he were chosen.

"WHEREUPON, the following proceedings were had and entered of record IN THE PRESENCE BUT OUT OF THE HEARING OF THE JURY PANEL:

"MR. KIMBRELL [attorney for defendant]: If Your Honor please, we object to Mr. Merz's request on the ground that he has given his own summary in his own words of the felony murder doctrine, and I now object to the formulation of this, because I am sure that the judge's instructions will prevail. However, he has not given a complete and accurate formulation of it, and I do not think that it is proper for him to strike for cause a juror who has indicated that he would not be able to follow Mr. Merz's instructions. THE COURT: Sustained. You will have to pursue it further.

"MR. MERZ: I am not sure that I understand the Court's ruling. Are you ruling that my statement * * * is incorrect or is there some other reason? He

didn't really say that he would not follow the Court's instructions, if you would listen to him carefully. If anything, I gathered that he was a hanging juror, if someone shot someone else in a felony, but I don't think that he understood what you said. I believe that he said that he could not. THE COURT: That is what his statement the second time was, but I don't know what he means by that. MR. KIMBRELL: It sounds to me like he means that he couldn't convict one person if the other person did the shooting, if under the felony murder rule he would be required to do so under the evidence. THE COURT: That is not the felony rule. That is the accessory rule. Sustained. You will have to pursue it further. I can't tell. * * *

"MR. MERZ: Mr. Andres, to clarify the record a little more on this, I think that there might be some misunderstanding, maybe, by myself, as to your answer. If under the Court's instructions to you, under the law that he gives you, that you were required to find the defendant guilty if you believed from the evidence and beyond a reasonable doubt, that he participated in a robbery, but that he did not pull the trigger, and someone was in fact killed, did I understand you correctly to say that you could not feel that you could convict someone of murder in the first degree if they were not the one who pulled the trigger? ROBERT R. ANDRES, JR.: Yes, sir.

"MR. KIMBRELL: Objection. I object to the form of the question, Your Honor.

"(WHEREUPON, the following proceedings were had and entered of record IN THE PRESENCE BUT OUT OF THE HEARING OF THE JURY:)

"MR. KIMBRELL: Again, the only proper question is whether the juror could follow the Court's instructions. THE COURT: Sustained. * * *

"MR. MERZ: Are you saying, then, that if the Court instructed you on the law in that regard, you would not be able to

follow the Court's instructions? MR. KIMBRELL: Again, Your Honor, there has not been a complete formulation for the jury to follow. THE COURT: Overruled. MR. KIMBRELL: May I make a specific record on my objection, Your Honor? THE COURT: You may.

"(WHEREUPON, the following proceedings were had and entered of record IN THE PRESENCE BUT OUT OF THE HEARING OF THE JURY PANEL:)

"MR. KIMBRELL: Again, Your Honor, it is my understanding of the law that if a juror is called upon to answer whether or not he can follow a particular instruction of the Court that the instruction itself must be specifically set out so that the juror can fully and fairly answer whether he would or would not be able to follow the instruction as to murder. He has not done this. He has simply formulated the instruction in his own terms.

"MR. MERZ: Your Honor, the jury panelist has indicated that if the law required him to convict a person of murder who was not the person who actually committed the murder, who caused the death, that he would be unable to follow the instructions. I think that the Court and Mr. Kimbrell and myself know that such an instruction would be given, to instruct the jury that persons who participated in the crime are equally guilty. Since this juror has indicated that he could not follow the instruction, I feel that the Court should excuse him for that, strike him, for that reason. I don't think that the Court should put him on the panel in that position where he has stated that he could not follow the law.

"MR. KIMBRELL: The Court has ruled on my objection.

"THE COURT: Go ahead. * * *

"MR. MERZ: Your Honor, at this time I would renew my request that Mr. Andres be excused for cause under the reasons that he has indicated. THE COURT: I don't think that he has answered the last question. * * *

"(WHEREUPON, the pending question was read by the court reporter.)

"ROBERT R. ANDRES, JR.: I do not feel that I could convict a man for another man's act.

"MR. MERZ: Well, now, let me see if I could rephrase the question so to be as specific as possible for the record here. If the Court instructed you that all persons participating in a robbery would be guilty of murder in the first degree, whether or not he was the person who actually fired the shot, if the Court so instructed you that all would be guilty under those circumstances, would you be able to follow such an instruction?

"MR. KIMBRELL: Objection, Your Honor, to the formulation of the question. It is an incomplete formulation of the question. THE COURT: Overruled. He may answer if he knows.

"MR. MERZ: You may answer the question. ROBERT R. ANDRES, JR.: I could not. No. THE COURT: All right. Mr. Andres, you are excused from any further service in this particular case, and thank you very much for your coming up here, and would you please report back to the jury room?"

▇▇▇ This excerpt has been stated in detail because it demonstrates that the law with respect to felony-murder and accomplices was not paraphrased inaccurately, and that it and the questions on the law were sufficient for voir dire discovery of prospective jurors' prejudice on those issues. Littell v. BiState Transit Development Agency, 423 S.W.2d 34 (Mo.App. 1967). It is true that a juror may not be asked what verdict he would vote if certain facts were shown, but these jurors were not asked to so commit themselves. They were asked only if they would be prevented from following the court's instructions on the issues in question. State v. Mosier, 102 S.W.2d 620, 624 (Mo.1937).

The type of question proscribed in the cases was not present in this voir dire. For example, the jurors were not asked if they would believe the defendant, State v. Gifford, 186 S.W. 1058 (Mo.1916); or what weight they would give to certain testimony, State v. Thursby, 245 S.W.2d 859 (Mo.1952); or whether they would find the defendant guilty if the State proved its case, State v. Kiner, 441 S.W.2d 720 (Mo. 1969). In short, control of voir dire examination is in the discretion of the trial court, and these circumstances do not show abuse of that discretion.

Appellant charges the court erred (IV) in allowing Officer Cox, in rebuttal, to impeach defendant with testimony that Clarence Green had told him that Henry French had stayed at his house "quite often," and that "he had knowledge of Henry French's other criminal activities" in "enough detail or outline that" Cox "was able to discover the report of these offenses and determine that he [defendant] did have knowledge of them." He argues that such was impeachment on collateral matters first raised by the State on cross-examination, and constituted "guilt by association."

This matter was first raised on defendant's direct examination when, pursuant to questions from his counsel, he testified that he and Henry French had never conversed about robbing any place. This went to the defense that, although admittedly present at the scene, the robbery-murder was committed by Henry French alone, and came as a surprise to defendant. This position was challenged upon cross-examination, and defendant maintained his denial of any planning of the robbery. Only then was the rebuttal admitted to show prior inconsistent statements of defendant bearing on the issue of his knowledge and planning of the robbery.

■ Accordingly, since the matter first arose on defendant's direct examination, it was properly for rebuttal; and, since it was on a material issue, i. e., the bystander defense, and by prior inconsistent statement of defendant, the rule against impeachment on collateral matters has no application and the testimony was admissible for both impeachment and as evidence of guilt. State v. Williams, 473 S.W.2d 388 (Mo.1971); State v. Garner, 481 S.W.2d 239, 240 (Mo.1972). Cf. State v. Granberry, 491 S.W.2d 528 (Mo.1973), where prior inconsistent statements were not proper for impeachment of a defendant where made by a nonparty witness.

■ Appellant also charges that it was error to permit the prosecuting attorney to comment in argument on this impeachment evidence as affirmative evidence of defendant's guilt. Since the evidence in question was admissible both for impeachment and as evidence of guilt, it was not error to permit the prosecuting attorney to comment on it.

Appellant charges the court erred (V) in overruling defendant's motion to suppress the rifle and his statements to the police, in that he was arrested without warrant or probable cause, and his statements were the fruit of the poisonous tree of the arrest and search.

There was evidence to show: that defendant went voluntarily to the Wellston Police Station in response to advice at his home that policemen had been there and that he "wanted to talk to them to see what they wanted"; that he was informed of his "Miranda rights" by Officer Cox; that defendant told Officer Cox that he and Henry French were close friends; that Cox "told him that we would like to search his house; that he did not have to permit this; that if he wanted, we would obtain a search warrant * * *. He was also advised that if he allowed a search and anything was found, that it could become evidence which might implicate him or show him to be an accessory or having knowledge of another crime, and could be used against him also. * * * He stated to his knowledge there was nothing in his house that could incriminate him, and he

would be glad to have us search his house." Defendant accompanied the officers to his house and the rifle was found. Defendant was taken into custody and made the admissions in question.

Defendant emphasizes other evidence to show the consent to search was not freely and voluntarily given. Conflict, if any, was for the court to resolve, and the court found that defendant consented to the search. It may not be said on this record that the failure to suppress was erroneous. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Appellant makes much of the court's observation in denial of the motion to suppress to the effect that when the officers talked to defendant, he was under "temporary and justifiable detention" and not arrest. This does not appear to have anything to do with the ruling; the basis for it is not whether defendant was under arrest but, rather, whether he freely and voluntarily consented to the search.

' ■ Since the search and seizure were justified by defendant's consent, there was no taint of statements by way of alleged fruit of the poisonous tree.

Appellant charges the court erred in giving Instructions Nos. 1, 2, 3, and 4. He asserts error in giving No. 2 because "homicide" was not defined, and it amounted to a second verdict instruction and directed conviction of defendant without requiring a finding of the essential elements of the crime. He asserts error in giving No. 3 because there was no evidence that defendant aided or abetted the person who committed the crime, and that it was too broad in not specifying what "acts" were aided and abetted. He asserts the four instructions together were repetitious and overemphasized the elements of aiding and abetting, and set forth four alternative theories for conviction.

Instructions 1, 2, 3, and 4 are conventional instructions. No. 1 submitted murder, first degree, and defined appropriate terms; No. 2 advised that homicide committed in perpetration of robbery is murder, first degree, and defined "robbery"; No. 3 covered guilt of one other than the person who actually killed or robbed if he aided and abetted the crime; No. 4 informed of the equal guilt of all who act together with a common intent to commit a crime.

■ Appellant cites no authority for his proposition that "homicide" as used in No. 2 should have been defined; however, the court did define murder, first degree, the crime on trial, in which case it was not necessary to define "homicide." State v. Hart, 292 Mo. 74, 237 S.W. 473, 482 [29, 30] (1922); State v. Anderson, 384 S.W. 2d 591, 599 [3–5] (Mo. banc 1964).

■ It was not necessary for No. 2 to submit elements of the crime because it was supplemental to No. 1 which did submit the elements of murder, first degree; and since it was only supplemental to No. 1, it did not constitute a second verdict-directing instruction. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 308 (banc 1954); State v. Phillips, 299 S.W.2d 431, 437–438 (Mo.1957).

■ No. 3 was supported by evidence in that all the evidence in the State's case went to show that the crime was committed by Clarence Green and Henry French. Nor is it too broad or abstract because it covered the dispute in evidence whether the triggerman was Clarence Green or Henry French.

■ Instructions 1, 2, 3 and 4 together are not subject to a charge of undue emphasis in submission of alternative theories because, as shown, they are supported by evidence, and alternate theories supporting conviction may be submitted if each theory is supported by evidence. State v. Rizor, 353 Mo. 368, 182 S.W.2d 525 (1944).

■ Appellant charges the court erred (VII) in refusing to rule upon defendant's objections and request for mistrial, assert-

ing misconduct by the prosecuting attorney with respect to a comment about defense counsel's handling of two shell case boxes, and a comment to the effect that he could not ask any more questions of Officer Lumsden.

The first incident occurred during the cross-examination of the State's ballistics expert, Mr. Brocksmith:

"MR. MERZ: He is referring to a box. I don't know if they are still in there. * * *

"MR. KIMBRELL: I ask for a mistrial. Is he implying that I have been tampering with the State's evidence? Will you admonish him for his remark that I have been tampering with the State's evidence? Mr. MERZ: Mr. Kimbrell has had them from time to time.

"WHEREUPON, the following proceedings were had and entered of record IN THE PRESENCE BUT OUT OF THE HEARING OF THE JURY:

"MR. KIMBRELL: Will you send the jury out, Judge? He started this by implying in some way that I had tampered with them. He didn't even know that I still had them. That was an uncalled-for remark, and I ask for a mistrial on it, and I ask that Mr. Merz be reprimanded. He impunes [sic] my integrity as a lawyer.

"MR. MERZ: He was suggesting that the shells in there were not the same as the ones that were originally placed in there, and Mr. Brocksmith has already testified without objection that they were.

"THE COURT: The motion for a mistrial is denied. Let's go on, gentlemen. MR. KIMBRELL: Judge, I am asking that he be reprimanded for this. THE COURT: We will see how it goes. Let's go on."

The second incident occurred in this context:

"Q (By Mr. Merz) Detective Lumsden, at any time during any of your interviews did Clarence Green ever say that he did not participate in this robbery? A. No, sir. MR. KIMBRELL: Objection, Your Honor.

"(WHEREUPON, the following proceedings were had and entered of record IN THE PRESENCE BUT OUT OF THE HEARING OF THE JURY:)

"MR. KIMBRELL: Your Honor, this is exactly the same thing. THE COURT: Objection sustained. If Mr. Merz is going to ask it again—MR. MERZ: Judge, I didn't say it—'denial.' THE COURT: If you do this one more time, I'm going to declare a mistrial. Sustained.

"(WHEREUPON, the following proceedings were had and entered of record IN THE PRESENCE AND HEARING OF THE JURY:)

"MR. MERZ: I can't ask you any more questions. Thank you, Officer.

"(WHEREUPON, the following proceedings were had and entered of record IN THE PRESENCE BUT OUT OF THE HEARING OF THE JURY:)

"MR. KIMBRELL: I object. When Mr. Merz says that 'I can't ask you any more questions'—MR. MERZ: Oh, brother. THE COURT: I am up to here with your comments. Call your next witness."

Both of these contentions relate to matters under the discretionary control of the trial judge, and no interference is warranted absent a showing that the judge abused his discretion. State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 588 (banc 1950).

Appellant argues that the first incident cast his counsel in the light of tampering with the evidence; however, it appears equally clear that the comment went to the suggestion in cross-examination with respect to whether the shells in evidence in the boxes in evidence were the same as those examined by the witness. The incident was isolated, and the court's handling of it does not appear as an obvious abuse of discretion.

Similarly, with respect to the second incident, it is not made to appear how the comment, "I can't ask you any more questions," was in any way prejudicial to defendant; and the court's observation, "I am up to here with your comments," was obviously directed at Mr. Merz rather than to defense counsel.

■ Appellant charges the court erred (VIII) in failing to excuse prospective juror Mosbacher on defendant's challenge for cause.

The examination of Mr. Mosbacher follows:

"MR. KIMBRELL: Now, is there anyone here who has ever been the victim of a major crime or serious crime? * * * I am talking about something that might have been serious enough that it might have influenced your judgment * * *.

"JACOB G. MOSBACHER: My home was burglarized about a year and a half ago. * * * MR. KIMBRELL: And was there any prosecution instituted as far as you know of? JACOB G. MOSBACHER: None. I have got a daughter that cannot stay at home at nighttime now. So it does affect me. MR. KIMBRELL: So you think that it does affect your ability to remain impartial in this trial? JACOB G. MOSBACHER: I think that it might, yes. MR. KIMBRELL: If the Court please, then I would like to institute a challenge for cause for Mr. Mosbacher? MR. MERZ: Your Honor, I would like to ask a question. THE COURT: All right. Go ahead. MR. MERZ: Mr. Mosbacher, you say that it might affect your judgment in this case? Let me ask you this. Supposing that you heard the evidence and you were not convinced beyond a reasonable doubt, that you were not convinced that this man was guilty, you wouldn't find him guilty because of what happened to your house, would you? JACOB G. MOSBACHER: No, I don't think so. MR. MERZ: And in spite of this incident which—undoubtedly, every experience that anyone has affects their judgment some-

what as you go through life, this happens, obviously—do you think here that you could hear the evidence, and fairly and impartially, and then follow the law? My point is simply this. Do you feel that this incident happening to you would cause you to be unfair to this man or to the State? JACOB G. MOSBACHER: No. MR. MERZ: And so you understand that this case here has nothing to do with your case, obviously? JACOB G. MOSBACHER: Yes. MR. MERZ: Your Honor, I would object to this panelist being stricken for cause.

"THE COURT: Maybe Mr. Kimbrell would want to question him further? MR. KIMBRELL: I would stand on his answer.

"THE COURT: Mr. Mosbacher, you have said that you would give both the State and defendant a fair trial, and you have also said that it would affect your judgment. So you have given two inconsistent answers. JACOB G. MOSBACHER: I will be thinking about it. THE COURT: The fact that you had your home burglarized is not a very pleasant experience, but do you understand that it has nothing to do with this lawsuit here today? JACOB G. MOSBACHER: Yes, I understand it. THE COURT: The only thing that the attorneys want to know in this case is can you give both parties a fair trial although you have had this happen to you in your life, that the facts of this case have nothing to do with the facts of that case? JACOB G. MOSBACHER: Yes, that is right.

"MR. KIMBRELL: Has the Court ruled on my motion? THE COURT: Yes. The motion is denied."

On this record it may not be said that the court abused its discretion, because the sense of the examination is that the juror would base his verdict solely on the evidence. State v. Daugherty, 484 S.W.2d 236 (Mo.1972); State v. Cuckovich, 485 S.W.2d 16 (Mo. banc 1972); State v. Harris, 425 S.W.2d 148, 155 (Mo.1968). Cf.

State v. DeClue, 400 S.W.2d 50 (Mo. 1966); State v. Spidle, 413 S.W.2d 509 (Mo.1967); State v. Lovell, 506 S.W.2d 441 (Mo. banc 1974).

Appellant's charges IX and X going to refusal of defendant's Instructions G and F on reasonable doubt and credibility were withdrawn on oral argument.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.